IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
|  | § |  |
| In re: | § | Chapter 11 |
|  | § |  |
| AMERIFORGE GROUP INC., *et al.*,[1] | § | Case No. 17-32660 (DRJ) |
|  | § |  |
| Debtors. | § | (Joint Administration Pending) |
|  | § | (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING THE
PAYMENT OF CERTAIN PREPETITION AND POSTPETITION
TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.  A HEARING WILL BE HELD ON THIS MATTER ON <u>MAY 2, 2017, AT 2:30 P.M. (CT)</u> BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Ameriforge Group Inc. (7053); 230 Bodwell Corporation (3965); Advanced Joining Technologies, Inc. (6451); AF Gloenco Inc. (9958); AFG Brazil Holdings LLC (8618); AFG Brazil LLC (8720); AFG Louisiana Holdings Inc (4743); Allpoints Oilfield Services LLC (8333); Ameriforge Corporation (1649); Ameriforge Cuming Insulation LLC (0264); Century Corrosion Technologies LLC (8548); Cuming Corporation (9782); Dynafab Acquisitions Corp. (1331); Flotation Technologies LLC (4572); FR AFG Holdings, Inc. (2623); NRG Manufacturing Louisiana LLC (5823); NRG Manufacturing Inc (7544); Steel Industries Inc. (5154); Steel Industries Real Estate Holding LLC (1298); and Taper-Lok Corporation (8833). The debtors' service address is:  945 Bunker Hill Road, Suite 500, Houston, Texas 77024.

KE 45570658
KE 45570658

The above-captioned debtors and debtors in possession (together, the "Debtors") respectfully state the following in support of this motion (this "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing, but not directing, the Debtors to (i) remit and pay (or use tax credits to offset) certain prepetition taxes and fees that accrued prior to the commencement of these chapter 11 cases and that will become payable during the pendency of these chapter 11 cases and (ii) remit and pay (or use tax credits to offset) certain taxes and fees that arise or accrue in the ordinary course of business on a postpetition basis, and (b) granting related relief.

**Jurisdiction, Venue, and Background**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 6003 and 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

4. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Curtis S. Samford in Support of Chapter 11 Petitions and First Day Motions* (the "Samford Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

## The Debtors' Tax and Fee Obligations

5. In the ordinary course of business, the Debtors collect, withhold, and incur income, franchise, license, and property taxes, as well as other business, customs, environmental, and regulatory fees (collectively, the "Taxes and Fees").[3] The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (collectively, the "Authorities"). A schedule identifying the Authorities is attached hereto as **Exhibit B**.[4] Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Samford Declaration.

[3] By this Motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings. Such relief is instead requested in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

[4] To the extent that the Debtors inadvertently omitted any Authority from **Exhibit B**, the Debtors request that any relief granted under this Motion with respect to Taxes and Fees apply to all Authorities, regardless of whether any such Authority is specifically identified on **Exhibit B**.

3

6. The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them quarterly, semiannually, or annually, depending on the particular Tax or Fee. The Debtors believe that they are substantially current with respect to their payment of accrued prepetition Taxes and Fees that were payable as of the Petition Date. By this Motion, the Debtors seek authority to make such payments where, to the extent necessary: (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; and/or (d) Taxes and Fees incurred for prepetition periods become payable after the commencement of these chapter 11 cases.

7. The Debtors believe that any failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations and affect stakeholder value. *First*, the Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention during their restructuring. *Second*, failure to pay Taxes and Fees could potentially subject certain of the Debtors' directors, managers, and officers to claims of personal liability. *Third*, failure to pay the Taxes and Fees likely would cause the Debtors to lose their ability to conduct business in certain jurisdictions. *Fourth*, unpaid Taxes and Fees may result in penalties and/or the accrual of interest, which would negatively affect stakeholder value. Additionally, the Debtors collect and hold funds to satisfy certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and any such funds may not constitute property of the Debtors' estates.

8.  The Debtors estimate that approximately $987,500 in Taxes and Fees relating to the prepetition period will become due and payable to the Authorities after the Petition Date, which Taxes and Fees are summarized as follows:

| Category | Description | Approximate Amount Accrued as of Petition Date |
|---|---|---|
| Income Taxes | States and federal income taxes incurred in the ordinary course of business. | $3,500 |
| Franchise Taxes | Taxes required to conduct business in the ordinary course. | $409,000 |
| Property Taxes | Taxes and obligations related to real and personal property holdings. | $575,000 |
| | Total | $987,500 |

**I.    Income Taxes.**

9.  In the ordinary course of operating their businesses, the Debtors incur state and federal income taxes (collectively, the "Income Taxes"). In 2016, the Debtors paid approximately $22,000 in Income Taxes. As of the Petition Date, the Debtors estimate that they owe approximately $3,500 to the relevant Authorities on account of prepetition Income Taxes.

10. The Debtors seek authority to honor any outstanding prepetition obligations on account of Income Taxes in the ordinary course of business and consistent with past practice to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**II.   Franchise Taxes.**

11. In the ordinary course of operating their businesses, the Debtors may incur various state franchise taxes (collectively, the "Franchise Taxes") to continue conducting their businesses pursuant to state laws. More specifically, in 2016, the Debtors paid approximately $540,000 in Franchise Taxes. Based on this historical amount, as of the Petition Date, the

Debtors believe that they owe approximately $409,000 to the relevant Authorities on account of prepetition Franchise Taxes.

12. The Debtors seek authority to honor outstanding prepetition obligations on account of Franchise Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

### III. Property Taxes.

13. State and local laws in the jurisdictions in which the Debtors operate generally grant Authorities the power to levy property taxes, including ad valorem taxes (collectively, the "Property Taxes"), against the Debtors' real and personal property. To avoid the imposition of statutory liens on their real and personal property, the Debtors typically pay the Property Taxes in the ordinary course of business on an annual or semi-annual basis.

14. In 2016, the Debtors paid approximately $3,850,000 in Property Taxes to the applicable Authorities. This amount includes Property Taxes collected from third parties and paid to the applicable Authorities. As of the Petition Date, the Debtors will have accrued prepetition Property Taxes, particularly ad valorem taxes. However, because the amount of such obligations are primarily based on the assessed value of the Debtors' properties, the Debtors are not able to reliably assess the amount of prepetition Property Taxes outstanding. The Debtors expect that such prepetition amounts will be generally consistent with the historical accrual rate for Property Taxes, which amounts to approximately $575,000.

15. The Debtors seek authority to honor outstanding prepetition obligations on account of Property Taxes in the ordinary course of business and consistent with past practice and to continue paying any such obligations related thereto in the ordinary course of business on a postpetition basis.

**Basis for Relief**

I.      **Payment of the Taxes and Fees Is Necessary and Appropriate.**

16.     Any failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways: (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain of the Debtors' directors, managers, and officers could be subject to claims of personal liability. In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates. Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, all to the detriment of the Debtors' stakeholders.

      A.      **Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

17.     Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 59 (1990); *DiChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 433–34 (2d Cir. 1985) (holding that a sales tax that is required by state law to be collected by sellers from their customers is a "trust fund" tax); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 97 (3rd Cir. 1994) (holding that income required to be withheld by city ordinance and state law is held "in trust" for the taxing authority); *In re Al Copeland Enter., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993); *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."). Because the Debtors may not have an equitable interest in funds held on account of such "trust

fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[5]

      **B.**     **Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.**

18.    Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess interest and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

      **C.**     **Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

19.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air*

---

[5]    For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

8

*Lines, Inc. (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) (noting that there were "legitimate business justifications" for the proposed sales).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

20. This standard is satisfied here.  The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations.  If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, managers, officers, or other employees, thereby distracting these key personnel from the administration of the Debtors' chapter 11 cases. *See, e.g.*, *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)).  Any

9

collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' personnel is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

21. Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees, which amounts may also be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11 U.S.C. §§ 507(a)(8)(C) and 507(a)(8)(G). Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

22. Courts in this district and elsewhere routinely approve relief similar to that requested herein. *See, e.g.*, *In re Linn Energy*, *LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 13, 2016); *In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex. Apr. 18, 2016); *In re Energy XXI LTD*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2016); *In re*

*Southcross Holdings*, *LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016); *In re Sherwin Alumina Co.*, No. 16-20012 (DRJ) (Bank. S.D. Tex. Jan. 13, 2016)[6].

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

23. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and/or postpetition financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests the Court has not authorized will be made inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### Emergency Consideration

24. In accordance with Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the

---

[6] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

11

Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

26. Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity.

### Notice

27. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Deutsche Bank Trust Company Americas, as administrative agent under the Debtors' prepetition first lien credit facility, and counsel thereto; (d) Delaware Trust Company, as administrative agent under the Debtors' prepetition second lien credit facility, and counsel thereto; (e) counsel to the ad hoc group of holders of

claims under the Debtors' prepetition first lien credit facility; (f) counsel to the ad hoc group of holders of claims under the Debtors' prepetition second lien credit facility; (g) counsel to the Sponsor; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Authorities; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

## **No Prior Request**

28. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

KE 45570658

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Houston, Texas<br>Dated: April 30, 2017 | */s/Patricia B. Tomasco*<br>Patricia B. Tomasco (TX Bar No. 01797600)<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>Jennifer F. Wertz (TX Bar No. 24072822)<br>**JACKSON WALKER L.L.P.**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone: (713) 752-4200<br>Facsimile: (713) 752-4221<br>Email: ptomasco@jw.com<br>mcavenaugh@jw.com<br>jwertz@jw.com |

-and-

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* admission pending)
William A. Guerrieri (*pro hac vice* admission pending)
Bradley Thomas Giordano (*pro hac vice* admission pending)
Christopher M. Hayes (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
will.guerrieri@kirkland.com
bradley.giordano@kirkland.com
christopher.hayes@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

KE 45570658

**Certificate of Service**

   I certify that on April 30, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                   */s/ Patricia B. Tomasco*
                   Patricia B. Tomasco

KE 45570658