**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| AMERIFORGE GROUP INC., *et al.*,[1] | § § | Case No. 17-32660 (DRJ) |
| Debtors. | § § § | (Joint Administration Pending) (Emergency Hearing Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE
COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION
OBLIGATIONS RELATED THERETO, (B) RENEW, AMEND, SUPPLEMENT,
EXTEND, OR PURCHASE INSURANCE POLICIES IN THE ORDINARY
COURSE OF BUSINESS, (C) HONOR THEIR PREPETITION INSURANCE
PREMIUM FINANCING AGREEMENT, (D) RENEW THEIR PREMIUM FINANCING
AGREEMENT IN THE ORDINARY COURSE OF BUSINESS, AND (E) CONTINUE
THEIR SURETY BOND PROGRAM AND (II) GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Ameriforge Group Inc. (7053); 230 Bodwell Corporation (3965); Advanced Joining Technologies, Inc. (6451); AF Gloenco Inc. (9958); AFG Brazil Holdings LLC (8618); AFG Brazil LLC (8720); AFG Louisiana Holdings Inc (4743); Allpoints Oilfield Services LLC (8333); Ameriforge Corporation (1649); Ameriforge Cuming Insulation LLC (0264); Century Corrosion Technologies LLC (8548); Cuming Corporation (9782); Dynafab Acquisitions Corp. (1331); Flotation Technologies LLC (4572); FR AFG Holdings, Inc. (2623); NRG Manufacturing Louisiana LLC (5823); NRG Manufacturing Inc (7544); Steel Industries Inc. (5154); Steel Industries Real Estate Holding LLC (1298); and Taper-Lok Corporation (8833). The debtors' service address is:  945 Bunker Hill Road, Suite 500, Houston, Texas 77024.

KE 45578108

> **EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.  A HEARING WILL BE HELD ON THIS MATTER ON <u>MAY 2, 2017, AT 2:30 P.M. (CT)</u> BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (together, the "<u>Debtors</u>") respectfully state the following in support of this motion (this "<u>Motion</u>"):

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "<u>Order</u>") (a) authorizing, but not directing, the Debtors to:  (i) continue existing insurance coverage entered into prepetition and satisfy payment obligations related thereto; (ii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business; (iii) honor their prepetition insurance premium financing agreement; (iv) renew their premium financing agreement in the ordinary course of business; and (v) honor their obligations owed to surety bond providers and providing additional surety bonds as needed in the ordinary course of business; and (b) granting related relief.

### Jurisdiction, Venue, and Background

2. The United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "<u>Amended Standing Order</u>").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 6004, and rules 4002-1(b) and 9013-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules").

4. On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Curtis S. Samford in Support of Chapter 11 Petitions and First Day Motions* (the "Samford Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

I. **The Debtors' Insurance Policies and Related Payment Obligations.**

   A. **Insurance Policies**

5. In the ordinary course of business, the Debtors are covered under approximately 16 insurance policies that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). These policies provide coverage for, among other things, commercial general liability and excess liability, business automobile liability, foreign casualty liability, marine cargo and contractors liability, basic accident liability, umbrella coverage, directors' and

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Samford Declaration.

officers' liability, and aircraft liability (collectively, the "Insurance Policies"). In addition, the Debtors are in the process of obtaining "tail" coverage with respect to their directors' and officers' liability coverage (the "D&O Tail Policy"). Although they have not obtained such coverage as of the date hereof, they expect to obtain such coverage on or before the anticipated effective date of their proposed plan of reorganization. A schedule of the Insurance Policies is attached hereto as **Exhibit B**.[3]

6. Generally, the Insurance Policies are renewed yearly on October 31. The Debtors finance the annual premiums due under the Insurance Policies pursuant to a premium financing policy provided by Aon Premium Finance, LLC ("Aon Finance"), as described more fully herein. Except as otherwise provided herein, the Debtors believe they are current on all payments with regard to the Insurance Policies as of the Petition Date.

7. Continuation of the Insurance Policies and entry into new insurance policies, including the D&O Tail Policy, is essential to the preservation of the value of the Debtors' businesses and operations. Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, the Debtors request authority to maintain their existing Insurance Policies, pay prepetition obligations related thereto, renew, amend, supplement or extend their existing Insurance Policies, and enter into new insurance policies, including, but not limited to, the D&O Tail Policy, and related finance

---

[3] As set forth on the Insurance Policies list on **Exhibit B** attached hereto, the Debtors maintain insurance policies with respect to, among other things, workers' compensation, employee health, dental, disability, and life insurance benefits. These programs are described, and relief is requested with respect to such programs, in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

4

KE 45578108

arrangements, as applicable, in the ordinary course of business on a post-petition basis, subject to applicable law.

**B.      The Debtors' Deductible Fees.**

8.      Some of the Insurance Policies require the Debtors to pay a per-incident deductible. For instance, the Debtors' general liability and auto liability policies carry a $1,000 deductible per automobile (up to $50,000 value). Generally, if a claim is made against the Debtors' insurance policies, the Debtors' third-party administrator or insurance carrier will administer the claim and make any payments in connection therewith. The Debtors then reimburse, via a deductible payment, the third-party administrator or insurance carrier on a monthly or quarterly basis (the "Deductible Fees"). In other words, the Debtors must ultimately pay for any successful or settled claims against an Insurance Policy up until the Debtors meet their deductible threshold. Any claim amounts due in excess of that amount are the carrier's responsibility.

9.      As of the Petition Date, the Debtors estimate that there are no Deductible Fees due and owing on account of the Insurance Policies. Going forward, to the extent not already prepaid, the Debtors will need to continue to make these deductible payments (should they arise) to preserve the coverage provided under certain Insurance Policies. As such, the Debtors seek authority to remit outstanding prepetition Deductible Fees under the Insurance Policies, if any, and to continue paying Deductible Fees in the ordinary course of business on a postpetition basis in order to ensure uninterrupted coverage of the Insurance Policies.

**C.      The Debtors' Insurance Broker Fees.**

10.      The Debtors obtain the Insurance Policies through their insurance brokers, Aon Risk Solutions ("Aon"), and Amwins Group, Inc. ("AmWins," and together with Aon, the "Brokers"). Aon assists the Debtors in obtaining liability coverage required domestically and

5

AmWins assists the Debtors in obtaining liability coverage required for the Debtors' foreign operations. The Brokers assist the Debtors in obtaining comprehensive insurance coverage for their operations in the most cost-effective manner, negotiating policy terms, provisions, and premiums, assisting the Debtors with claims, and providing ongoing support throughout the applicable policy periods. The Brokers are paid a fee for professional services related to the premiums paid, which fees totaled approximately $260,000 in 2016. These fees are paid for pursuant to the Debtors' premium financing policy, discussed in more detail below.

11.     As of the Petition Date, the Debtors do not believe that they owe any amount to the Brokers on account of prepetition fees, commissions, or any other prepetition obligations. To the extent any such prepetition amounts remain outstanding, the Debtors seek authority to honor any amounts owed to the Brokers in full, in cash, and in the ordinary course of business.

**D.     The Debtors' Premium Financing Agreement.**

12.     The Debtors have additionally entered into an agreement (the "Aon Financing Agreement") with Aon Finance to provide financing for the premiums due under their Insurance Policies because it is not economically advantageous for the Debtors to pay the premiums on such policies, in full, on a lump-sum basis. Aon Finance subsequently assigned the Aon Finance Agreement to IPFS Corporation ("IPFS"), who notified the Debtors of this assignment (the "IPFS Agreement," and, together with the Aon Financing Agreement, the "Premium Financing Agreement"). Pursuant to the IPFS Agreement, IPFS paid the amounts due under the Aon Finance Agreement on the Debtors' behalf, and the Debtors pay IPFS directly in accordance with the payment schedule included in the IPFS Agreement.

13.     The total amount of premiums and fees due on account of the Debtors' Insurance Policies for the policy year ending October 31, 2017 was approximately $2,120,000. Of this amount, the Debtors paid approximately $610,000 as a down payment on October 31, 2016.

6

In addition, pursuant to the Premium Financing Agreement, the Debtors paid $167,938.78 to IPFS on November 30, 2016, and $169,544.44 on the 30th day of each month between December 2016 and the Petition Date. There are currently three payments of $169,544.44 remaining under the Premium Financing Agreement for the months of May through July 2017.

14. The Debtors are current on all payments to IPFS. If the Debtors are unable to continue honoring their obligations under the Premium Financing Agreement, IPFS and/or Aon Finance may seek relief from the automatic stay to terminate the Insurance Policies to recoup their losses. The Debtors could then be required to obtain replacement insurance on an expedited basis, likely at significant cost to their estates, and due as a lump-sum in advance. Even if the Insurance Policies were not terminated, any interruption in the Debtors' payments could have a severe, adverse effect on the Debtors' ability to finance premiums for future policies. In view of the importance of maintaining insurance coverage with respect to their business activities and the preservation of the Debtors' cash flow by financing the premiums due under the Insurance Policies, the Debtors believe that it is in the best interests of their estates to honor their obligations under the Premium Financing Agreement. The Debtors therefore seek authority to continue honoring their obligations under the Premium Financing Agreement. Any other alternative would likely require considerable additional cash expenditure and would cause direct harm to the Debtors' estates.

**II.     The Debtors' Surety Bond Program.**

15. In the ordinary course of business, the Debtors are required to provide surety bonds to certain third parties, often governmental units or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program"). Currently, the Debtors are required to provide a surety bond to the U.S. Department of Homeland Security in connection with the import of goods required for the Debtors' operations. This surety

bond was issued by Navigators Insurance Company ("Navigators") with $50,000 outstanding thereunder.  The Debtors may, in the ordinary course of business, obtain additional sureties from other surety bond providers (collectively, and together with Navigators, the "Sureties").  As of the Petition Date, the Navigators bond was the only surety bond outstanding, but the Debtors may be required to provide additional surety bonds in the ordinary course of business.[4]

16.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from the Debtors to a surety.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal.  As of the Petition Date, the Debtors do not believe that they owe any amounts to the Sureties on account of the annual premiums or any other prepetition obligations.  Out of an abundance of caution, however, the Debtors seek authority to honor any amounts owed to the Sureties to ensure the Surety Bond Program remains uninterrupted.

17.     To continue their business operations during the reorganization process, the Debtors must be able to provide financial assurance to state governments, regulatory agencies, and other third parties.  This, in turn, requires the Debtors to maintain the existing Surety Bond Program, including paying bond premiums as they come due, providing collateral, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements, as needed, in connection with the Surety Bond Program. Failing to provide, maintain, or timely replace their surety bonds will prevent the Debtors from complying with their obligations and undertaking essential functions related to their operations. Accordingly, the Debtors seek authority to pay any prepetition amounts owed on account of the Surety Bond Program and continue the Surety Bond Program in the ordinary course of business.

---

[4]  The Debtors request authority to honor obligations and renew all surety bonds, as applicable.

**Basis for Relief**

**I.     Paying Obligations Under the Insurance Policies and the Premium Financing Agreement in the Ordinary Course of Business Is Warranted.**

18.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to chapter 11 debtor's duty to preserve the estate); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims as requested herein.

19.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts in this jurisdiction require only that the debtor show that a business purpose justifies the proposed use of property. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex.

9

1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b) of the Bankruptcy Code.

20. Moreover, under section 105(a) of the Bankruptcy Code, a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use § 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); *see also In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (discussing the use of section 105 where necessary to preserve the estate).

21. And, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *See In re CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor-in-possession to pay prepetition claims); s*ee also In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003) (allowing payment of prepetition claims according to the standards set forth in *CoServ*); *cf*. Bankruptcy Local Rule 4002-1(b) (requiring the debtor to prevent the depletion of the assets of the business during the proceedings).

22.     The Debtors believe, in their reasonable business judgment that honoring their obligations under the Insurance Policies, Premium Financing Agreement, and Surety Bond Program is essential to preserving uninterrupted operations and the value of the Debtors' estates and is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity. Failing to maintain the Insurance Policies and Surety Bond Program and honor their obligations under the Premium Financing Agreement and Surety Bond Program would impair—if not altogether halt—the Debtors' ability to operate, resulting in a material adverse effect on the Debtors' businesses and the value of their estates.

23.     Further, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 7, which includes the Southern District of Texas (the "U.S. Trustee Operating Guidelines"). Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

24.     Courts in this district and in others routinely grant similar relief. *See, e.g.*, *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 17, 2017) (authorizing debtors to pay prepetition insurance obligations and enter into new insurance policies in the ordinary

11

KE 45578108

course); *In re Sherwin Alumina Co.*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016) (same); *In re CJ Holdings Co.*, No. 16-33590 (DRJ) (Bank. S.D. Tex. Sept. 12, 2016) (authorizing debtors to pay prepetition insurance obligations, enter into new policies, honor and renew their premium financing agreements, and maintain their surety bond program in the ordinary course); *In re Energy XXI LTD*, No 16-31982 (DRJ) (May 23, 2016) (authorizing the debtors to maintain their surety bond program); *In re EveryWare Global*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (authorizing the debtors to honor and maintain their insurance policies and premium financing arrangements); *In re Autoseis, Inc. (Glob. Geophysical Servs., Inc.)*, No. 14-20130 (RSS) (Bankr. S. D. Tex. Mar. 27, 2014) (same).[5]

## **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

25. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and/or postpetition financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies, as applicable. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests the Court has not authorized will be made inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

---

[5] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

KE 45578108

**Emergency Consideration**

26. In accordance with Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

27. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Reservation of Rights**

28. Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an admission as to the validity, enforceability, or perfection of any

13

lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (f) a waiver of any claims or causes of action which may exist against any entity.

## Notice

29. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Deutsche Bank Trust Company Americas, as administrative agent under the Debtors' prepetition first lien credit facility, and counsel thereto; (d) Delaware Trust Company, as administrative agent under the Debtors' prepetition second lien credit facility, and counsel thereto; (e) counsel to the ad hoc group of holders of claims under the Debtors' prepetition first lien credit facility; (f) counsel to the ad hoc group of holders of claims under the Debtors' prepetition second lien credit facility; (g) counsel to the Sponsor; (h) the United States Attorney's Office for the Southern District of Texas; (i) the Internal Revenue Service; (j) the United States Securities and Exchange Commission; (k) the state attorneys general for states in which the Debtors conduct business; (l) the Brokers; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

## No Prior Request

30. No prior request for the relief sought in this Motion has been made to this or any other court.

KE 45578108

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Houston, Texas<br>Dated:  April 30, 2017 | */s/ Patricia B. Tomasco*<br>Patricia B. Tomasco (TX Bar No. 01797600)<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>Jennifer F. Wertz (TX Bar No. 24072822)<br>**JACKSON WALKER L.L.P.**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Telephone:  (713) 752-4200<br>Facsimile:  (713) 752-4221<br>Email:  ptomasco@jw.com<br>            mcavenaugh@jw.com<br>            jwertz@jw.com<br><br>-and-<br><br>Edward O. Sassower, P.C. (*pro hac vice* admission pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900<br>Email:  edward.sassower@kirkland.com<br><br>-and-<br><br>James H.M. Sprayregen, P.C. (*pro hac vice* admission pending)<br>William A. Guerrieri (*pro hac vice* admission pending)<br>Bradley Thomas Giordano (*pro hac vice* admission pending)<br>Christopher M. Hayes (*pro hac vice* admission pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:  (312) 862-2000<br>Facsimile:  (312) 862-2200<br>Email:  james.sprayregen@kirkland.com<br>            will.guerrieri@kirkland.com<br>            bradley.giordano@kirkland.com<br>            christopher.hayes@kirkland.com<br><br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* |

KE 45578108

**Certificate of Service**

       I certify that on April 30, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 */s/ Patricia B. Tomasco*
                                                 Patricia B. Tomasco

KE 45578108